[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14467
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-20092-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OMAR WEISE,
a.k.a. Michael Andrew Clarke,
a.k.a. Angel Navarro,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 6, 2015)

Before MARTIN, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Omar Weise appeals from his conviction and sentence of 360 months' imprisonment for engaging in sex trafficking of minors.  Mr. Weise argues that the evidence presented at trial was insufficient to sustain his conviction, prosecutorial misconduct deprived him of a fair trial, and the district court committed errors at sentencing that led to miscalculation of his guideline range.  After careful review, we affirm both his conviction and sentence.

I.

Mr. Weise went to trial on an indictment alleging two counts of sex trafficking of a minor by force, fraud, or coercion, in violation of 18 U.S.C. § 1591(a)(1), (b)(1).  The counts corresponded to two minors, S.L. and A.R.E., who worked as dancers and prostitutes for Mr. Weise.  S.L., A.R.E., and other sex workers affiliated with Mr. Weise testified at trial that Mr. Weise could be violent at times, but each witness insisted that the violence was limited to personal disagreements unrelated to dancing or prostitution.  The most graphic account of Mr. Weise's violence involved S.L.:  the jury heard about an occasion on which Mr. Weise punched her hard enough to break her jaw and send her to the hospital.  The jury ultimately convicted Mr. Weise of the count relating to S.L. based on its findings that Mr. Weise knew or recklessly disregarded her age and that he knew

2

or recklessly disregarded that she was coerced into engaging in commercial sex acts. As a result of the jury's finding with regard to coercion, Mr. Weise was subject to an enhanced mandatory minimum penalty pursuant to subsection (b)(1) of the statute.[1]

The jury found Mr. Weise not guilty of the second count relating to A.R.E. At sentencing, however, the district court found that the government had proven the conduct involving A.R.E. by a preponderance of the evidence. Accordingly, the court took that conduct into consideration in calculating his guideline range, classifying it as a separate offense group pursuant to § 2G1.3(d) and Part D of Chapter Three of the Sentencing Guidelines. On the basis of the two groups of offenses, the district court calculated a guideline range of 360 months' to life imprisonment and imposed a sentence of 360 months' imprisonment. This appeal followed.

## II.

Mr. Weise first contends that the evidence presented at trial was insufficient to sustain his conviction. "We review *de novo* the sufficiency of the evidence presented at trial, and we will not disturb a guilty verdict unless, given the evidence in the record, no trier of fact could have found guilt beyond a reasonable

---

[1] Subsection (b)(1) provides for a fifteen-year mandatory minimum penalty when the victim is below the age of 14 or the defendant effects the offense through force, fraud, or coercion. For all other violations of the statute, subsection (b)(2) provides for a ten-year mandatory minimum instead. *See* 18 U.S.C. § 1591(b).

3

doubt." *United States v. Mozie*, 752 F.3d 1271, 1285 (11th Cir. 2014) (internal quotation marks omitted). "In reviewing the sufficiency of the evidence, we look at the record in the light most favorable to the verdict and draw all reasonable inferences and resolve all questions of credibility in its favor." *Id.* (internal quotation marks omitted). For a conviction under 18 U.S.C. § 1591 to stand, the evidence must show that (1) the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained a person; (2) the defendant knew, or recklessly disregarded the fact, either that the person was a minor and would be caused to engage in a commercial sex act or that means of force, threats of force, fraud, or coercion would cause the person to engage in a commercial sex act; and (3) the defendant's acts were in or affected interstate or foreign commerce. 18 U.S.C. § 1591(a); *see Mozie*, 752 F.3d at 1286. Here, to sustain the application of subsection (b)(1)—which provides for a higher mandatory minimum than subsection (b)(2) and triggers a higher base offense level at sentencing—the evidence must show that the offense was "effected by means of force, threats of force, fraud, or coercion." 18 U.S.C. § 1591(b)(1). Mr. Weise argues that the evidence is insufficient to establish two of the above elements: (1) that his arrangement with S.L. relied on force, fraud, or coercion and (2) that his actions were in or affected interstate or foreign commerce.

4

First, we reject Mr. Weise's argument that his relationship to S.L. was free of coercion as a matter of law. The statute defines "coercion" to include "any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to . . . any person." *Id.* § 1591(e)(2)(B). "Serious harm" is then defined as

> any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

*Id.* § 1591(e)(4). In the light of this definition, the record supports the conclusion that S.L. reasonably believed that continuing to engage in sex work for Mr. Weise was necessary to avoid serious harm. S.L. testified that after spending a night sleeping on the beach, she realized that she "needed" Mr. Weise and "didn't have [anywhere] else to go." Doc. 43 at 173. When the government asked her why she did not return to Mr. Weise that night, she testified, "Because I didn't get money . . . ." *Id.* She suggested that Mr. Weise deliberately avoided obtaining false identification for her, which would have given her more independence in finding work, so that she would remain dependent on him. And, although multiple witnesses testified that Mr. Weise did not rely on physical violence to manage sex workers, the occasion on which he broke S.L.'s jaw demonstrates otherwise. S.L testified that Mr. Weise hit her because "he didn't want" S.L. "to fight" with

5

another worker. *Id.* at 163. A reasonable interpretation of this testimony is that Mr. Weise hit her as punishment for behavior he found unacceptable, rather than to break up a fight. In sum, a reasonable jury could have concluded that S.L. potentially faced a variety of harms—physical, financial, and psychological— whenever she failed to conduct herself in accordance with Mr. Weise's wishes.

Second, the record supported the jury's finding that Mr. Weise's actions were in or affected interstate or foreign commerce. This Court has declared that intrastate sex trafficking of minors inherently affects interstate commerce. *United States v. Evans*, 476 F.3d 1176, 1179 (11th Cir. 2007) ("[The defendant's] enticement of [a minor] to commit prostitution, even though his actions occurred solely in Florida, had the capacity when considered in the aggregate with similar conduct by others, to frustrate Congress's broader regulation of interstate and foreign economic activity."). This finding has further support when a pimp makes use of goods and services in or affecting interstate commerce, such as phones and hotels, as Mr. Weise did here. *Id.* at 1179-80; *see United States v. Pipkins*, 378 F.3d 1281, 1295 (11th Cir. 2004), *vacated on other grounds*, 544 U.S. 902 (2005), *and reinstated*, 412 F.3d 1251 (11th Cir. 2005). Accordingly, we hold that the evidence is sufficient to sustain Mr. Weise's conviction.

III.

Mr. Weise argues next that the government engaged in misconduct that deprived him of a fair trial.  He identifies two sources of error:  first, the government's lines of questioning that he claims improperly asserted facts not in evidence and, second, the government's closing arguments that Mr. Weise argues were unsupported by the record.  At trial, Mr. Weise objected only to two lines of questioning.  We review those allegations of prosecutorial misconduct *de novo*. *United States v. Epps*, 613 F.3d 1093, 1100 (11th Cir. 2010).  To merit reversal, "(1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." *Id.* (internal quotation mark omitted).  Because Mr. Weise failed to object below to any other line of questions or statements he now challenges, including a third line of questioning and certain statements from closing argument, we review each of those new challenges for plain error. *United States v. Flanders*, 752 F.3d 1317, 1332-33 (11th Cir. 2014).  Thus, we will reverse on the basis of those questions or statements only if "(1) an error occurred; (2) the error was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness of the judicial proceedings." *Id.* at 1333.

At trial, Mr. Weise objected to two lines of questioning in which the government was attempting to impeach its own witness, Alexandrea Snapp.  After she testified that Mr. Weise was not generally violent, the government sought to show that she had told members of the prosecution team before trial that Mr. Weise

7

frequently employed violence to manage sex workers.  The first exchange to which Mr. Weise objected took place on redirect examination of Ms. Snapp.  The government insisted, in question form, that Ms. Snapp had told the government that Mr. Weise "beat [her] all the time" and "was very frequently abusive of both [Ms. Snapp] and all the other girls working for him."  Doc. 43 at 124-25.  After Ms. Snapp denied making those statements, the government sought to impeach her testimony with extrinsic evidence in another exchange, to which Mr. Weise also objected:  Agent Amanda Detterline testified that Ms. Snapp had in fact said before "that she was beaten all the time by [Mr. Weise]" and that "[b]ecause she herself had been beaten multiple times by Omar Weise," she was able to discern that Mr. Weise had beaten S.L. when she saw S.L.'s injuries.  Doc. 44 at 105-06.  Mr. Weise characterizes the government's lines of questioning as misconduct because, in his view, they had a testimonial character and communicated to the jury facts not in evidence.  For the same reason, Mr. Weise newly asserts on appeal that a third line of questioning, which implied Ms. Snapp had previously told the prosecution that S.L. appeared to be over 18, was also error.

We find no merit in Mr. Weise's characterization of these exchanges.  The exchanges reflect textbook use of prior inconsistent statements to impeach a witness.  *United States v. Sisto*, 534 F.2d 616, 622 (5th Cir. 1976) ("[I]f on cross-examination the witness has denied making the statement, or has failed to

8

remember it, the making of the statement may be proved by another witness."). If Mr. Weise's aim on appeal is to lodge an evidentiary challenge to Agent Detterline's testimony, then his briefs fail to explain why the effect of the testimony was other than to impeach Ms. Snapp or why the district court's later limiting instructions were insufficient to cure any problem.

For the first time on appeal, Mr. Weise also argues that several statements made by the government in closing argument constitute misconduct: (1) that after failing to obtain money from a date, S.L. chose to sleep on the beach instead of returning to Mr. Weise because "she was afraid of what his reaction would be"; (2) that the jury had heard Ms. Snapp "talk about the times in which the defendant hit her"; and (3) that Mr. Weise had "[n]o problem with adult prostitutes" giving out his name but made sure that underage girls did not use his name, so that he would stay out of trouble. Doc. 44 at 140, 184. Mr. Weise argues that these statements prejudiced his substantial rights because they misstated the evidence or drew unreasonable inferences therefrom.

We disagree. "The purpose of closing argument is to assist the jury in analyzing the evidence, and although a prosecutor may not exceed the evidence presented at trial during her closing argument, she may state conclusions drawn from the trial evidence." *United States v. Reeves*, 742 F.3d 487, 505 (11th Cir. 2014). Here, the prosecutor's statements do not constitute plain error, even if one

9

of them could have strayed toward an unreasonable inference.  The first statement

is permissible because, for reasons articulated in Part II, a reasonable jury could

infer that S.L. was afraid to return to Mr. Weise after the date in question.  The

second statement is merely a reference to the fact that Mr. Weise hit Ms. Snapp on

multiple occasions, which is a restatement of Ms. Snapp's own testimony that

requires no additional inferences.  Doc. 43 at 83-84.  The third statement presents a

closer issue, as the government did not offer any evidence that Mr. Weise had no

objection to adult prostitutes using his name.  Assuming *arguendo* that this

statement was improper, however, any error, even if plain, did not affect Mr.

Weise's substantial rights.  The purpose of the third statement was to show that

Mr. Weise knew that his two victims were underage.  However, this finding was

not essential to Mr. Weise's conviction.  The statute of conviction requires only

that Mr. Weise at least recklessly disregarded the fact of S.L.'s age *or* the coercive

nature of his relationship with S.L.[2]  *See* 18 U.S.C. § 1591(a).  The jury found that

he had the requisite mental state with regard to both elements.  Doc. 33.  Therefore,

---

[2] We note also that "[i]n a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained or maintained, the Government need not prove that the defendant knew that the person had not attained the age of 18 years."  18 U.S.C. § 1591(c).

none of the government's statements at closing argument constitutes reversible error.[3]

## IV.

Mr. Weise challenges the district court's calculation of his sentencing guideline range on three grounds: (1) the district court considered acquitted conduct involving A.R.E. despite insufficient evidence of Mr. Weise's guilt, (2) it was erroneous double counting for the district court to impose a two-level enhancement under § 2G1.3(b)(4)(A) for each victim, and (3) it was error to impose a two-level enhancement under § 2G1.3(b)(2)(B) for each victim because Mr. Weise did not "unduly influence" either victim to engage in sex work. We review a district court's findings of facts at sentencing for clear error, and we review the district court's application of the guidelines to those facts *de novo*. *United States v. Mandhai*, 375 F.3d 1243, 1247 (11th Cir. 2004). Where we find error, we deem it harmless if "the error did not affect the substantial rights of the parties." *United States v. Hernandez*, 160 F.3d 661, 670 (11th Cir. 1998) (citing 28 U.S.C. § 2111).

While two of Mr. Weise's claims with respect to A.R.E. present closer issues than those regarding S.L., any error in the district court's consideration of

---

[3] We need not address Mr. Weise's claim of cumulative error. "If there are no errors or a single error, there can be no cumulative error." *United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004) (quoting *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001)).

conduct related to A.R.E. was harmless.  We begin by showing that there was no error in the district court's calculation of an offense level for conduct involving S.L.  Then, we demonstrate that even if we accepted *arguendo* that Mr. Weise did not coerce or unduly influence A.R.E. into engaging in commercial sex acts, his guideline range would remain the same.

## A.

First, we reject Mr. Weise's argument that the district court's application of guideline § 2G1.3(b)(4)(A) resulted in double counting.  "Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines."  *United States v. Matos-Rodriguez*, 188 F.3d 1300, 1309 (11th Cir. 1999) (internal quotation marks omitted).  Mr. Weise argues that his underlying offense already contemplates "the commission of a sex act or sexual contact," which is the entire basis for the enhancement.  *See* U.S.S.G. § 2G1.3(b)(4)(A) (2012).  However, the underlying offense requires only that force "will be used" to cause a commercial sex act or that a minor "will be caused" to engage in such an act.  18 U.S.C. § 1591.  To preserve the meaning of the future-tense verbs in the statute, this Court must read the statute to mean that completion of a victim's sex act is not necessary to a conviction.  *United States v. Willoughby*, 742 F.3d 229, 241 (6th Cir. 2014) (noting

agreement with every circuit to address the issue).  This reading recognizes the completion of a sex act as a harm distinct from the process of exploitation that leads up to such an act.  Mr. Weise does not contest that both S.L. and A.R.E. engaged in commercial sex acts while affiliated with him.  For these reasons, an enhancement under this subsection was appropriate as to either victim.

Second, we find that the enhancement for "unduly influenc[ing]" a minor under § 2G1.3(b)(2)(B) was appropriate as to S.L.  The guidelines provide that this Court should consider whether Mr. Weise's influence over S.L. "compromised the voluntariness" of S.L.'s behavior.  U.S.S.G. § 2G1.3 cmt. 3B (2012).  Absent conflicting evidence, the Guidelines allow us to presume "some degree of undue influence" on the basis that S.L. is at least ten years younger than Mr. Weise.  *See id.*  Given the substantial evidence of coercion recited above in Part II, we find no clear error in the district court's imposition of this enhancement with respect to conduct involving S.L.

### B.

We now turn to Mr. Weise's argument that the district court lacked sufficient evidence to consider acquitted conduct involving A.R.E. at sentencing.  This argument has two parts:  Mr. Weise contends both that he did not know A.R.E. was a minor and that he did not force her to engage in sex acts.  In the light of the guideline calculations that necessarily result from our conclusions thus far,

13

we need only address the first contention.  Although A.R.E. had fake identification and others might have thought that she appeared older, A.R.E. testified that she told Mr. Weise that she was 17 while working for him.  At sentencing, the district court determined on the basis of the trial record that A.R.E. appeared to be disinterested in the outcome of the case and that her testimony supported a finding that Mr. Weise was responsible for a second violation of 18 U.S.C. § 1591 for sentencing purposes.  We are bound by this credibility determination.  *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002).  Thus, we find no clear error in the district court's finding, by a preponderance of the evidence, that Mr. Weise could be held responsible for a second violation.

Keeping in mind that the district court did not err in calculating an offense level for conduct involving S.L. or in imposing an enhancement under § 2G1.3(b)(4)(A) for conduct involving A.R.E., we conclude that any remaining error is harmless.  We need not reach the closer questions of whether Mr. Weise coerced A.R.E. into engaging in commercial sex acts (aggravating the base offense level for his second violation) or whether he unduly influenced her to do the same (triggering the relevant enhancement).  Even if we decided both of those questions in Mr. Weise's favor, his guideline range would remain unchanged given our

14

analysis to this point.[4]  At worst, any error has no effect on Mr. Weise's substantial

rights and is therefore harmless.

V.

For the foregoing reasons, Mr. Weise's conviction and sentence are

**AFFIRMED.**

---

[4] As we found no error in the calculation of an offense level for conduct involving S.L., the offense level for "Group One" remains at 38.  "Group Two," which relates only to A.R.E., would have a base offense level of 30 (as is required when the defendant knew the victim was a minor but did not coerce her).  The enhancement for completion of a sex act would still add two levels, and the enhancement for use of a computer—which Mr. Weise does not challenge on appeal—would add two more.  Because the resulting offense level of 34 for Group Two would only be four levels below the offense level for Group One, the units calculation required under § 3D1.4 would add two more levels to the higher of the two base offense levels, bringing the final adjusted offense level to 40.  Given a criminal history category of III, the correct guideline range would be 360 months' to life imprisonment, which is the same range the district court used.